CHARLES BROADWAY ROUSS INCORPORATED *v.* FIRST NATIONAL BANK OF COLUMBUS *et al.*

No. 10386.   FEBRUARY 12, 1935.
ADHERED TO ON REHEARING, FEBRUARY 28, 1935.

248

*Slade, Swift, Pease & Davidson* and *R. E. Dismukes,* for plaintiff in error.

*George C. Palmer* and *Thomas L. Bowden,* contra.

RUSSELL, Chief Justice. (After stating the foregoing facts.) The first question which arises in this case is whether the conflict in the evidence of the executrix, Mrs. Westbrook, with that of the witness Hunt, the cashier of the bank, raised such an issue of fact as should have been submitted to a jury for determination; or whether, regardless of this apparent conflict, the evidence upon all material or controlling points in the case is in such harmony that this divergence as to one particular point does not so affect the proper result as to require a reversal of the judgment. Mrs. Westbrook, the executrix, by interrogatories, testified that the debt due to the bank which was created by the testator in his lifetime had not been fully paid at the time she first signed a note as executrix, as authorized by law. On the other hand the witness Hunt testified: "Mr. Westbrook owed the bank at the time of his death, and that was all paid in full." So the question arises, first, as to which testimony shall be accepted as true and correct; and then the question is raised as to what difference, if any, the testimony would make as affecting the rights of the creditors. Bear in mind that under the Code of 1910, § 4001, the rights of creditors must always be superior to the testamentary devises. If the issue of fact which appears to be suggested by the testimony of the two witnesses to whom we have referred is ineffectual to alter the rights of the two creditors, the apparent conflict would be immaterial in appraising the direction of the verdict in this case. By directing a verdict the court took from the jury the right of determining and of awarding superior credibility to either of the two witnesses. But does it affect the lawful and proper conclusion of the case? If the court, by withdrawing the issue of fact under consideration, did not in any wise affect the result which should have been reached upon legal principles upon the uncontradicted evidence, there would be no error of law, and the verdict could well be said to be demanded, and that no other verdict could lawfully have been rendered. If, upon uncontradicted evidence, the verdict directed by the court is the only legal result that could have been reached, then the court did not err in directing the verdict. Code of 1910, § 5926. The bank by uncontradicted evidence established that at the time of the testator's death he was indebted to the bank. At that time his estate, as matter of law, became indebted to the bank.

At the same time Rouss Inc., the intervenor, was likewise a creditor, and was entitled, as neither of them was a lien creditor, to occupy a position similar to that occupied by the bank, though the amount of its claim was much larger than that due to the bank. The demands of each creditor and both of them were more potent than the provisions of the testator's will, since both law and equity require that a testator must be just in the payment of his obligations before he can be generous in making gifts or conveyances which may be adverse to the interest of creditors. The intervenor, plaintiff in error, in aid of its desire to collect its debt, suggested the formation of the corporation known as the C. E. Westbrook Realty Company, and induced the heirs and legatees to transfer to intervenor a large majority of the stock of the realty company as security for the notes held by intervenor of the legatees representing the balance due it. It appears without dispute that at the death of C. E. Westbrook he was indebted to Rouss Inc. in the sum of approximately $250,000, and that the legatees operated his mercantile business, and by December, 1929, this amount had been reduced to $67,000. Matters thus stood as to the claim of Rouss Inc. when the C. E. Westbrook Realty Company was chartered, and the widow and her son and daughter, the sole heirs at law, executed to Rouss Inc. their individual joint notes, 67 in number, for $1000 each, maturing one each month, transferring to the payee in the notes 67,000 of the 90,000 shares of stock in the realty corporation. They failed to take up these notes as they matured; and in April, 1931, at which time the indebtedness had been reduced to $58,000, they gave to Rouss Inc. a series of notes for $500 each, also maturing one each month, likewise secured by the shares of stock in the realty corporation.

The will did not directly authorize the organization of this corporation; and broad as are the powers conferred by the testator in the administration of the estate, any act which would give a preference to one creditor rather than to another, regardless of any question of fraud, would be beyond the powers conferred by law upon decedents who die owing just debts. So we are of the opinion that the claim of Rouss Inc. did not derive any priority over the claim of the bank by the creation of the realty corporation and the transfer of the stock of that corporation to it, and that this effort to obtain a priority was abortive. Later the bank (as

it is admitted, without practicing any fraud) procured the signature of the executrix of the testator' to a note or notes for money which had been advanced to the testator in his lifetime. This, as appears from the record, was in pursuance of the power conferred by the testator in his will. Therefore we hold that not only was the execution of these notes in accordance with the provisions of the will, but,. what is far more important, was not in conflict with or in derogation of the law. The execution of these notes can not be construed as the giving of a preference to one creditor over another. The execution of the notes amounted to no more than an admission that the debt claimed by the bank was a lawful obligation due by the testator. The bank knew of the organization of the realty corporation, and that its only assets consisted of real estate belonging to the estate of the testator, which had been conveyed to the corporation by the legatees at a time when the bank's debt against the estate was unpaid. The bank knew that a majority of the stock in the corporation had been transferred to Rouss Inc. But the bank did not seek to obtain any preference. It bided its time, indulged the debtor for several years. At length having previously induced the formation of the realty corporation and the transfer of a large majority of its stock to it (the realty corporation being based entirely upon the unadministered realty of the testator, the widow and the other two heirs having conveyed all of his real estate to the realty corporation), Rouss Inc. had thus sought to divest the estate of the testator of all of its realty subject to his debts. Then it was that the bank sent notice to the executrix notifying her to repossess the estate of the realty involved in this proceeding, setting forth the amount of its claim against the executrix, and demanding that said real estate be sold for the payment of the bank's claim. Shortly after the receipt of this notice the bank accepted a note for the amount of its claim against the executrix, the note being signed by her as executrix, and also signed by the realty corporation, being dated June 12, 1931. This note not being paid, on December 28, 1931, the realty corporation executed to the bank its security deed as security for the payment of this note.

From this statement of facts it is very apparent that the bank acquired the security deed and a priority in accordance with law, not primarily as a matter of preferring the bank as a creditor, but

by virtue of the requirements of the Civil Code of 1910, § 3934. The action brought by the bank is a proceeding to foreclose a security deed made to the bank to secure an indebtedness of the estate, in recognition of the principle stated in § 3934, which deed accomplished the same result as would have been attained in a proceeding strictly following the provisions of this code section. It appears without dispute that more than $100,000 had been paid on the debt of the estate to Rouss Inc., and the record does not demand the inference that the amount due the bank was ever reduced. It appears that in December, 1929, when Rouss Inc. was given notes signed by the heirs of C. E. Westbrook, its claim was in the form of an open account. From the record it appears plain that in December, 1929, Rouss Inc. was an open-account creditor of the estate of C. E. Westbrook for a balance then due of $67,000, and that it accepted the personal undertaking of the three individuals comprising the heirs and legatees for this $67,000. It also appears without contradiction that the attorneys representing Rouss Inc., in the negotiations which led up to the forming of the realty corporation and the transfer of a majority of its stock, were fully advised of the claim of the bank against the estate. Considering the power granted in the will to the executrix, and all the evidence regarding the consideration and circumstances attending the execution of the note upon which the action in this case is based, it appears that the note here involved was executed by the executrix in her representative capacity. This case differs from *McFarlin* v. *Stinson,* 56 *Ga.* 396, in which the will contained no authority to the executrix to execute a promissory note on behalf of the estate.

The verdict and judgment in this case were based upon uncontradicted evidence; and inasmuch as the property sought to be conveyed by the legatees to the realty corporation before administration had ceased was subject to the payment of the debts of the estate, the transfer of the testator's realty to the corporation was affected with this condition, and the security deed made by the corporation to the bank in recognition of this liability was not made as a matter of accommodation, and therefore was not a voluntary conveyance. "The consideration of a deed may always be inquired into when the principles of justice require it." Code of 1910, § 4179.

*Judgment affirmed. All the Justices concur, except Atkinson, J., who dissents.*

Upon consideration of the motion for rehearing granted in this case, the judgment heretofore rendered in this cause is adhered to.